# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**22-143**
**consolidated with 22-144 and 22-145**

**PRISCILLA PETE, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD, CHRISTIAN PETE**

**VERSUS**

**IRIS ANN BARRON, PROGRESSIVE SECURITY INSURANCE COMPANY, PEYTON DAVISON, AND STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT**

**CONSOLIDATED WITH**

**CHRISTOPHER MADISON, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILDREN, LAURYN MADISON AND AUTUMN HAYWARD**

**VERSUS**

**IRIS ANN BARRON, PROGRESSIVE SECURITY INSURANCE COMPANY, PEYTON DAVISON, AND STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT**

**CONSOLIDATED WITH**

**IRIS ANN BARRON**

**VERSUS**

**PEYTON DAVISON, AND STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT**

**APPEAL FROM THE**
**NINTH JUDICIAL DISTRICT COURT**
**PARISH OF RAPIDES, NUMBERS 267,151, 267,165, AND 267,441**
**HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE**

**\*\*\*\*\*\*\*\*\*\***

**SHARON DARVILLE WILSON**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, D. Kent Savoie, and Sharon Darville Wilson, Judges.

**AFFIRMED.**

**SAVOIE, J., dissents and assigns reasons.**

**Wm. David Coffey**
**Assistant Attorney General**
**Louisiana Department of Justice**
**Litigation Division**
**1450 Poydras Street, Suite 900**
**New Orleans, LA  70112**
**(504) 599-1200**
**Counsel for Defendants/Appellants:**
    **State of Louisiana, through the Department of Transportation and**
    **Development**
    **Peyton Davison**

**Stephen J. Hecker**
**Hecker Law Firm**
**631 St. Charles Avenue, Suite 2F**
**New Orleans, LA  70130**
**(504) 491-8599**
**Counsel for Plaintiff/Appellee:**
     **Iris Ann Barron**

Sebastian Hoffpauir
Assistant Attorney General
Louisiana Department of Justice
Litigation Division
900 Murray Street, Suite B-100B
Alexandria, LA  71301
(318) 487-5944
Counsel for Defendants/Appellants:
    State of Louisiana, through the Department of Transportation and
    Development
    Peyton Davison

Donna M. Johnson
Casler, Bordelon & Gelder
4000 S. Sherwood Forest Boulevard, Suite 303
Baton Rouge, LA  70816
(318) 451-0998
Counsel for Defendants/Appellees:
    Iris Ann Barron
    Progressive Security Insurance Company

Jeannie C. Prudhomme
Assistant Attorney General
Louisiana Department of Justice
Litigation Division
556 Jefferson Street, 4th Floor
Lafayette, LA  70501
(337) 262-1700
Counsel for Defendants/Appellants:
    State of Louisiana, through the Department of Transportation and
    Development
    Peyton Davison

Thomas B. Wahlder
Attorney at Law
1740 Jackson Street
Alexandria, LA  71306
(318) 442-9417
Counsel for Plaintiffs/Appellees:
    Priscilla Pete, o/b/o Christian Pete
    Christopher Madison, Individually and o/b/o Lauryn Madison and
    Autumn Hayward

**WILSON, Judge.**

Defendants/Appellants, Payten Davison (Davison) and the State of Louisiana, through the Department of Transportation and Development (DOTD), appeal the trial court's grant of summary judgment in favor of Defendants, Iris Ann Barron (Barron) and her insurer, Progressive Security Insurance Company (Progressive), on the issue of Barron's liability. We affirm the trial court's ruling.

## I.

## ISSUES

We must decide whether there is an issue of material fact regarding Barron's alleged comparative negligence in causing the accident that is the subject of this litigation.

## II.

## FACTS AND PROCEDURAL HISTORY

This case arises out of an automobile accident that occurred on the afternoon of December 12, 2019, in the intersection of Lalla Street and Military Highway (the intersection) in Pineville, Louisiana. The intersection is controlled by stop signs on Lallah Street in both directions. Barron was driving a Jeep Cherokee on Lallah Street with the intention of crossing the intersection and continuing straight on Lallah Street. Davison was driving a GMC Sierra on Lallah Street in the opposite direction as Barron. He intended to turn left onto Military Highway. In the intersection, Davison's Sierra hit Barron's Jeep.

Barron had four passengers in her jeep: (1) her daughter, Lauryn Madison (Lauryn); (2) her adopted daughter, Autumn Haywood (Autumn); (3) her fiancé, Christopher Madison (Madison); and (4) Lauryn's friend, Christian Pete

(Christian). Davison was in the course and scope of his employment with DOTD at the time of the accident.

Three lawsuits were filed. One was filed by Priscilla Pete on behalf of her minor child, Christian (the Pete Plaintiffs) against Barron, Progressive, Davison, and DOTD.[1] Madison filed suit individually and on behalf of his minor daughter, Lauryn, and on behalf of Autumn[2] (the Madison Plaintiffs).[3] The Madison Plaintiffs named Barron, Progressive, Davison, and DOTD as defendants. Finally, Barron filed suit against Davison and DOTD.[4] The three lawsuits were consolidated by the trial court by order signed July 21, 2021.

The Madison Plaintiffs voluntarily dismissed their claims against Barron with prejudice but reserved their rights against "all parties named or to be named in this matter, including but not limited to Progressive Security Insurance Company [], Peyton Davison and State of Louisiana, Department of Transportation and Development." A judgment to that effect was signed on May 5, 2021.

On October 21, 2021, Barron and Progressive, in their capacity as defendants, filed a motion for summary judgment, alleging that there was absolutely no evidence that Barron "acted negligently and/or contributed in any way to the motor vehicle accident in question." In support of the motion, Barron and Progressive submitted the deposition testimonies of Barron, Christian, Madison, and Davison. Neither the Pete Plaintiffs nor the Madison Plaintiffs opposed the motion for summary judgment.

---

[1] District Court Docket Number 267,151-A.

[2] Madison conceded that he had no legal right to assert a claim on behalf of Autumn and agreed to have a tutor appointed to bring suit on her behalf.

[3] District Court Docket Number 267,165-F.

[4] District Court Docket Number 267,441-E.

Davison and DOTD opposed the motion and attached the accident report. Barron and Progressive filed a reply memorandum that objected to the introduction of the accident report based on La.Code Civ.P. art. 966(A)(4), which provides that "[t]he only documents that may be filed in . . . opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." Thus, the trial court excluded that accident report and did not admit it into evidence. The deposition testimonies submitted by Barron and Progressive were admitted into evidence.

Following a hearing on December 13, 2021, the trial court granted the motion for summary judgment as prayed for by Barron and Progressive. A judgment was signed that same day. The judgment dismissed the claims of the Pete Plaintiffs, the Madison Plaintiffs, and Autumn with prejudice as to Barron and Progressive. Davison and DOTD timely perfected this appeal.[5]

### III.

### STANDARD OF REVIEW

This court reviews the grant of a motion for summary judgment using a de novo standard of review. *Monk v. United Fire & Cas. Ins. Co.*, 13-1120 (La.App. 3 Cir. 5/7/14), 139 So.3d 577, *writ denied*, 14-1151 (La. 9/19/14), 149 So.3d 244.

### IV.

### LAW AND DISCUSSION

"The burden of proof rests with the mover." La.Code Civ.P. art. 966(D)(1). However, if the mover will not have the burden of proof on the issue that is before

---

[5] Even though the parties have not raised the issue, we note that Davison and DOTD may properly appeal the December 13, 2021 summary judgment. Even though they are not parties to the judgment, they are adversely affected by it. *See Mire v. Guidry*, 17-745 (La.App. 3 Cir. 6/27/18), 250 So.3d 383.

3

the court on the motion, the mover's burden "does not require him to negate all essential elements of the adverse party's . . . defense," but the mover must point out "the absence of factual support for one or more elements essential to the party's . . . defense." *Id.* If the mover is successful in doing this, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

> A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law, pursuant to LSA-C.C.P. art. 966(B).
>
> A fact is material if it potentially ensures of precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion there is no need for a trial on that issue[,] and summary judgment is appropriate.
>
> Because it is the applicable substantive law that determines materiality, whether a particular fact is in dispute is "material" for summary judgment purposes can only be seen in the light of the substantive law applicable to the case.

*Jackson v. City of New Orleans*, 12-2742, pp. 5-6 (La. 1/28/14), 144 So.3d 876, 882, *cert. denied*, 574 U.S. 869, 135 S.Ct. 197 (2014) (citations omitted).

In support of their motion for summary judgment, Barron and Progressive offered the deposition testimonies of Christian, Madison, Barron, and Davison. All of the witnesses were consistent in their testimonies that Barron had stopped at the stop sign on Lallah Street and that Davison's Sierra hit Barron's Jeep.

4

Christian[6] testified in deposition that Barron was giving him a ride home from school on the day of the accident. He said that Barron "pulled up on [Lallah] Street,[,] and she stopped at the stop sign. And then, she pulled up. And as she pulled up, like she was going forward, and he [Davison] just drove to, like the side of her car." Christian stated that he saw Davison's vehicle prior to the impact and that Davison did not stop at the sign. Christian further testified that Barron was not on her cell phone at the time of the accident and was not driving in a reckless matter.

Madison testified that Barron:

proceeded up to the stop sign[,] and we were waiting for the traffic to clear out so we could proceed across Military Highway. And as we were coming across Military Highway, the vehicle that was across the street at the stop sign, he proceeded to come out as well and make a left turn. And I don't know if he saw us or not, but he did make contact with us on the back driver's side door.

Madison further testified that "we were just about crossed over when he was coming out because he caught, like, the back end [,] and he was almost turned onto Military Highway, when he caught the back end of us." When asked whether they were across the center line of Military Highway when he felt the impact, Madison responded: "Yes." According to Madison, the damage to Barron's Jeep was "partially the back door and the back end across . . . where the back rear tire is." While he did not know how fast Barron was going, he testified that she was not driving very fast.

Barron testified that she stopped at the stop sign for about five minutes and that when she was almost across the intersection, just over the center line, Davison entered the intersection from the opposite side. Barron testified:

---

[6] Christian was fourteen years old at the time of the accident and sixteen years old at the time his deposition was taken.

Almost as soon as I got over the center line, he pulled out, and when he pulled out, he hit the back side where the kids were sitting on my side. Like I said, I was over the line, so almost made it across. He had looked to his right, but not toward us. I thought maybe he would turn to his right[,] and he didn't.

Davison testified in deposition:

I pulled up behind a white Ford van . . . . Traffic cleared enough to where the Ford went, so I pulled up. I turn my blinker on. I looked both ways, made sure nothing was coming. And I was actually – waited for traffic to clear for quite a while[,] and I looked straight forward . . ., and I didn't see anything coming, so I went to make my left turn, and when I made my left turn, that's when I noticed Ms. Barron coming straight in front of me[,] and I hit her right back door, or her driver's side passenger door.

Davison was asked: "Did you see Ms. Barron's vehicle – the other vehicle that was involved in the accident, did you see that vehicle prior to the impact?" Davison answered: "No, I did not." He testified that he did not notice Barron's Jeep across Military Highway at the other stop sign while he was waiting for traffic to clear.

Louisiana Revised Statutes 32:123(A) and (B) provide, in part, that a "[p]referential right of way at an intersection may be indicated by stop signs or yield signs" and that "[a]fter having stopped, the driver shall yield the right-of-way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway to constitute an immediate hazard." But, "[a] left turn is one of the most dangerous maneuvers a driver can execute, and therefore, before attempting same, a driver must ascertain whether it can be completed safely." *ES v. Thomas*, 17-1213, p. 6 (La.App. 1 Cir. 5/31/19), 278 So.3d 982, 987. Louisiana Revised Statutes 32:122 provides that "[t]he driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the

6

intersection or so close to thereto as to constitute an immediate hazard." An oncoming driver such as Barron "has a right to assume that the left-turning motorist will obey the law in allowing her to continue in her proper lane of travel and will yield to her right-of-way." *Upchurch v. State ex rel. La. Dept. of Transp. & Dev.*, 48,354, p. 6 (La.App. 2 Cir. 8/7/13), 123 So.3d 228, 232, *writ denied*, 13-2153 (La. 11/22/13), 126 So.3d 489. Moreover, if a collision occurs when a motorist is attempting to make a left turn, Louisiana jurisprudence places the burden "upon him to show that he was free from negligence." *Plaisance v. Epherson*, (La.App. 5 Cir. 1985), 466 So.2d 485, 487. "[N]otwithstanding the presumption of negligence attributed to a left-turning driver, the favored motorist can still be assessed with comparative fault if her substandard conduct contributed to the cause of the accident." *Henry v. Reeves*, 19-550, p. 9 (La.App. 5 Cir. 4/28/20), 296 So.3d 1076, 1082-1083, *writ denied*, 20-646 (La. 9/24/20), 301 So.3d 1176.

Once Barron supported her motion for summary judgment with evidence that she was not at fault in causing the accident, the burden shifted to Davison and DOTD to show that Barron was comparatively at fault. La.Code Civ.P. art. 967. "A party asserting comparative fault bears the burden of proof by a preponderance of the evidence that the other party's fault was a cause in fact of the damage complained of." *Pruitt v. Nale*, 45,483, p. 5 (La.App. 2 Cir. 8/11/10), 46 So.3d 780, 783. "[W]here reasonable minds cannot differ, a question of comparative fault is question of law that may be resolved by summary judgment." *Id*.

In opposition to the motion for summary judgment, Davison and DOTD argued that Barron failed to stop at the stop sign and that even if Barron had preempted the intersection, a reasonable person could find that Barron did not

7

carefully evaluate traffic conditions before entering the intersection "because there is conflicting testimony as to how long she had stopped at the stop sign, no testimony as to her speed when she entered the intersection, and she does not recall seeing Davison's left-turn signal."

There is no evidence in the record to suggest that Barron did not have the right of way, that she did not stop at the stop sign, or that she was speeding when she entered the intersection. Davison and DOTD presented no evidence or testimony to contradict the testimony of two witnesses, against their own interests in the litigation, that Barron stopped at the stop sign. Davison and DOTD presented no evidence whatsoever to rebut the presumption that Barron had the right of way. Davison's testimony does not contradict either Barron's testimony that she was "halfway across" and/or "almost . . . across" the center line when Davison hit her or Madison's testimony that Barron's Jeep had crossed the center line. Davison testified that he did not know "where [he] was between center line, the lane [he] was close to, or the furthest lane [he] was going to get in." When asked if he had crossed the center line at the time of impact, Davison responded that he was not sure. In fact, Davison's testimony established that he never saw Barron's Jeep until he hit it. Furthermore, Davison provided no evidence as to Barron's speed. Madison testified that Barron "was not going very fast" at the time of the accident, and Christian testified that Barron was not driving in a reckless manner. The testimony is consistent that Davison's truck hit Barron's Jeep. For these reasons, we find that Davison and DOTD presented no evidence of any genuine issue of material fact regarding any fault on Barron's part to defeat the motion for summary judgment.

# V.

## <u>CONCLUSION</u>

Upon our de novo review of the record, we find that a reasonable factfinder could not reach any conclusion other than that Barron was free from fault in causing this accident. Barron and Progressive met their burden of proving that no genuine issues of material fact exist regarding her lack of fault, and Davison and DOTD failed to produce any evidence to controvert this showing. Therefore, we affirm the trial court's grant of the motion for summary judgment in favor of Barron and Progressive. All costs of this appeal, which total $6,223.54, are assessed to Peyton Davison and the State of Louisiana, through the Department of Transportation and Development.

**AFFIRMED.**

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 22-143
### consolidated with 22-144 and 22-145

PRISCILLA PETE, INDIVIDUALLY AND
ON BEHALF OF HER MINOR CHILD,
CHRISTIAN PETE

VERSUS

IRIS ANN BARRON, PROGRESSIVE
SECURITY INSURANCE COMPANY,
PEYTON DAVISON, AND STATE OF
LOUISIANA, DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT

CONSOLIDATED WITH

CHRISTOPHER MADISON,
INDIVIDUALLY AND ON
BEHALF OF HIS MINOR
CHILDREN, LAURYN MADISON
AND AUTUMN HAYWARD

VERSUS

IRIS ANN BARRON, PROGRESSIVE
SECURITY INSURANCE COMPANY,
PEYTON DAVISON, AND STATE OF
LOUISIANA, DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT

CONSOLIDATED WITH

IRIS ANN BARRON

VERSUS

PEYTON DAVISON, AND STATE OF
LOUISIANA, DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT

**\*\*\*\*\*\*\*\*\***

**SAVOIE, J. dissents and assigns written reasons.**

I respectfully dissent from the majority's conclusion that a summary judgment dismissal of the claims asserted against Ms. Barron and Progressive was appropriate. I would reverse the trial court's judgment.

This case arises out of an auto accident that occurred between Ms. Barron and Mr. Davison in the intersection of Lallah Street and Military Highway in Pineville, Louisiana. The accident occurred as Ms. Barron was driving a Jeep Cherokee on Lallah Street toward the intersection, with the intention of proceeding straight and crossing over Military Highway. Meanwhile, Mr. Davison was driving a 2005 GMC Sierra on Lallah Street towards Military Highway, on the side of intersection opposite Ms. Barron, and intended to turn left onto Military Highway. The parties' vehicles collided in the intersection, with the front driver's side of Mr. Davison's vehicle hitting the rear door on the driver's side of Ms. Barron's vehicle.

At the time of the accident, there were stop signs on Lallah Street controlling traffic entering the intersection from both sides. Military Highway was a two-lane highway at the location of the accident, and there were no stop signs on Military Highway controlling traffic at the intersection.

Ms. Barron and Progressive filed a motion for summary judgment arguing that the plaintiffs could not prove that Ms. Barron "acted negligently and/or contributed in any way to the motor vehicle accident in question." The trial court granted the motion and dismissed the claims against them.

> On appeal, summary judgments are reviewed de novo. *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id*. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). This means that judgment must be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id*. If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id*.

2

Material facts are those that determine the outcome of the legal dispute. *Soileau v. D & J Tire, Inc*., 97-318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied*, 97-2737 (La. 1/16/98), 706 So.2d 979. In deciding whether facts are material to an action, we look to the applicable substantive law. *Id.*

*American Zurich Ins. Co. v. Caterpillar, Inc.*, 12-270, pp. 4-5 (La.App 3 Cir. 10/3/12), 99 So.3d 739, 742-43.

> In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor.

*Domingue v. Louisiana Guest House, LLC,* 17-633, p. 6 (La.App. 3 Cir. 12/6/17), 258 So.3d 3, 4, *writ denied,* 18-14 (La. 2/23/18), 237 So.3d 517.

The claims asserted against Ms. Barron and Progressive arise in negligence based on La.Civ.Code art. 2315. Moreover, La.Civ.Code art. 2323(A) states,

> In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined . . . . If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

In addition, under applicable Louisiana traffic laws, Ms. Barron and Mr. Davison each had statutory duties to fulfill as they proceeded into the intersection after having been required to stop at a stop sign. Louisiana Revised Statutes 32:123 states as follows with respect to intersections controlled by stop-signs (emphasis added):

> A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.

> B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the near side at a clearly marked stop line, but if none,

3

then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. **After having stopped, the driver shall yield the right-of-way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.**

Louisiana Revised Statutes 32:122 states as follows with respect to vehicles turning left at an intersection: "The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard." Additionally, La.R.S. 32:104(A) states "No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101[1]. . . or otherwise turn a vehicle from a direct course . . . unless and until such movement can be made with reasonable safety."

> Because a left turn is one of the most dangerous maneuvers for a driver to execute, there is a presumption of negligence on a left-turning motorist involved in a motor vehicle accident. Additionally, the oncoming driver may take advantage of a presumption of the left-turning motorist's negligence when the oncoming driver proves that the left-turning motorist executed a left-hand turn and crossed the center line at the time of impact. In *Plaisance v. Epherson*, 466 So.2d 485, 487 (La. App. 5th Cir. 1985), we stated:
>
> > Under our jurisprudence a motorist attempting to turn left must make certain the turn can be made without danger to normal overtaking or oncoming traffic and he must yield the right of way to such vehicles. He must refrain from making the left turn unless the way is clear, and if a

---

[1] Louisiana Revised Statutes 32:101 states:

> A. The driver of a vehicle intending to turn at an intersection shall proceed as follows:
>
> . . . .
>
> (2) Left turns on two-way roadways. At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

> collision occurs while he is attempting such a maneuver the burden is upon him to show that he was free from negligence.
>
> . . . .
>
> All motorists on Louisiana highways must drive with due regard for the traffic on the highway and have an affirmative duty not to drive faster than is reasonable and prudent under the conditions and potential hazards existing at the time. La. R.S. 32:64(A). **Thus, notwithstanding the presumption of negligence attributed to a left-turning driver, the favored motorist can still be assessed with comparative fault** if her substandard conduct contributed to the cause of the accident. A motorist making a left turn at an intersection will be held free of negligence when the collision results because of the oncoming vehicle's excessive speed which he could not have reasonably anticipated or an **oncoming driver's lack of lookout**.

*Henry v. Reeves*, 19-550, 19-456, pp. 8-9 (La.App. 5 Cir. 4/28/20), 296 So.3d 1076, 1082-83, *writ denied*, 20-646 (La. 9/24/20), 301 So.3d 1176 (internal citations omitted)(emphasis added).

It is not uncommon for Louisiana courts to assess both a left-turning driver and an oncoming driver with fault in causing an accident. In *Smith v. Direct General Insurance Company of Louisiana,* 12-1018 (La.App. 1 Cir. 4/29/13)(unpublished opinion), a driver who, after having stopped at a stop sign, proceeded into an intersection and attempted to turn left, was involved in an intersectional collision with an oncoming driver who had come from the opposite side of the intersection and was attempting to proceed straight across. The trial court found that the left-turning driver was fifty percent at fault for failing to observe what she should have seen as a prudent and careful driver and that the oncoming driver was also fifty percent at fault for entering the intersection when it was not safe to do so.

In affirming the trial court's fault allocation, the *Smith* court noted the lack of evidence concerning which driver left the stop sign first and the respective speeds of the drivers, and it stated, "the trial court could have reasonably concluded that Ms. Smith's [the left-turning driver's] statement that Mr. Hayes

5

'pulled out in front of' her after she began her left-hand turn . . .was credible proof that Mr. Hayes entered the intersection 'when it was apparently not safe to do so.'" *Id.* at 2.

Similarly, in *Palm v. Encompass Insurance Company of America,* 07-164 (La.App. 5 Cir. 10/16/07), 970 So.2d 1090, the court affirmed a fifty percent fault allocation to both the left-turning driver and the oncoming driver. The left-turning driver was headed south, stopped at a stop sign, and proceeded to turn left into the eastbound lane of the intersecting street. Meanwhile, the oncoming driver was proceeding north through the intersection from the opposite side, and a collision occurred in the intersection.

On appeal, the oncoming driver argued that a one hundred percent fault allocation to the left-turning driver was required because the left-turning driver did not demonstrate that he was free from fault as required by La.R.S. 32:122 and because he failed to overcome the presumption of negligence imposed on left-turning drivers. According to the left-turning driver, however, the trial court's fault allocation was not unreasonable because he established that the oncoming driver violated La.R.S. 32:123 in that

> Both drivers initially had the stop sign and both testified to stopping for the stop sign. However, Mr. Easterling [the left-turning driver] was in the neutral ground area first; meanwhile Mr. Palm [the oncoming driver] would still have been at the stop sign. Mr. Easterling no longer had the stop sign while in the neutral ground, but, at that point, Mr. Palm would have had the stop sign. Therefore, Mr. Palm had the duty to stop and not enter West Metairie at the time Mr. Easterling was in the neutral ground preparing to turn with his signal on.... As soon as there was an opening in West Metairie traffic, Mr. Palm rushed to the neutral ground without checking for the Easterling van.

*Palm,* 970 So.2d at 1092-93. The left-turning driver in *Palm* further cited to *Decker v. Employers Liability Assurance Corp.*, 47 So.2d 232, 234–35 (La.App. 4 Cir.1971), *writ refused*, 258 La. 915, 248 So.2d 586 (1971), which states:

6

We are fully aware of the jurisprudence to the effect that a motorist driving in a right of way street, in possession of knowledge that the intersecting street is controlled by a stop sign, has a right to assume that any driver approaching that intersection from the less favored street will observe the law and bring his vehicle to a complete stop before entering the intersection. Such motorist may indulge in this assumption until he sees, or should see that the other vehicle has or will not observe his obligation to stop.

In rejecting the oncoming driver's argument that the left-turning driver should have been assessed with one hundred percent of the fault, the *Palm* court stated that allocation of fault is a factual determination, the trial court had and the opportunity to consider the theories presented by both parties, and, after considering the evidence, the trial court was not manifestly erroneous in its fault allocation. *Palm* 970 So.2d 1090.

In *Leonard v. Lee,* 49,669 (La.App. 2 Cir. 4/29/15), 165 So.3d 1083, 1092, the court of appeal set aside the trial court's one hundred percent fault allocation to the left-turning driver involved in a collision in an intersection with a driver turning right from the opposite side of the intersection, and it assessed both drivers with fifty percent fault because "[b]oth drivers should have seen each other; both drivers could have easily avoided this wreck." The court stated:

Notwithstanding the presumption against the left-turning motorist carefully applied by the trial court, the trier of fact must compare the relative fault of the parties and assess comparative fault when appropriate. The absence of this examination of relative fault resulted in the judgment lacking a reasonable factual basis that Lee was not at fault. That factual finding was clearly wrong.

*Id.* at 1091.

In the instant case, Ms. Barron and Progressive, as the movers, failed to satisfy their burden of showing a lack of factual support for an essential element of the claims asserted against them – namely, that Ms. Barron acted negligently and/or contributed to the accident. In support of their motion, they submitted the deposition testimony of Ms. Barron, Mr. Madison, and Christian Pete, *as well as* the deposition testimony of Mr. Davison. However, when read collectively and in

7

its entirety, this deposition testimony creates issues of material fact concerning who entered the intersection first. This in turn creates issues of material fact as to who had the right of way, whether Ms. Barron and/or Mr. Davison entered the intersection when it was unsafe to do so, and whether Ms. Barron and/or Mr. Davison failed to see the other when they should have. "Where reasonable minds could differ as to comparative fault of the parties, summary judgment is inappropriate." *Berthiaume v. Gros*, 15-116, p. 5 (La.App. 3 Cir. 6/3/15), 165 So.3d 1275, 1278.

Mr. Davison testified in his deposition as follows with respect to the subject accident (emphasis added):

> I pulled up behind a white Ford that was at the stop sign on the corner of Military and Lallah Street. Traffic cleared enough to where the Ford went, so I pulled up. **I turned my blinker on**. I looked both ways, made sure nothing was coming. And I was actually – waited for traffic to clear for quite a while and I looked straight forward – or straight left and right, and **I didn't see anything coming, so I went to make my left turn, and when I made my left turn, that's when I noticed Ms. Barron coming straight in front me** and I hit her right back door, or her driver's side passenger door.

Mr. Davison then clarified that he had turned on his left turn signal because he had intended to turn left onto Military Highway.

Mr. Davison further testified that he did not see Ms. Barron's vehicle stopped at the stop sign before he entered the intersection and that he did not know whether Ms. Barron stopped at the stop sign. He also testified that he was driving less than five miles per hour when the collision occurred.

While Mr. Davison testified that he did not know specifically where in the intersection the accident occurred, "factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Domingue*, 258 So.3d at 4. Mr. Davison testified that he stopped at the stop sign on Lallah Street before entering the intersection, turned on his left turn signal, looked both ways, proceeded into the

8

intersection when it was clear, and that as he made his left turn, he saw Ms. Barron "straight in front of" him, and he hit her vehicle.

A factfinder could reasonably infer from Mr. Davison's testimony that the intersection was clear when he pulled out from the stop sign, that Ms. Barron was not in the intersection at that time, and therefore, Mr. Davison entered the intersection before Ms. Barron. A reasonable factfinder could further conclude that Ms. Barron had a duty to stop and not enter the intersection when Mr. Davison was already in the intersection with his left turn signal activated, and/or that it was unsafe for Ms. Barron to enter the intersection from the stop sign when she did. *See Smith,* 12-1018 (La.App. 1 Cir. 4/29/13), *and Palm,* 970 So.2d 1090.

In addition, Ms. Barron testified that she did not see Mr. Davison's left turn signal, even though Mr. Davison testified it was on. Therefore, a factfinder could reasonably conclude that Ms. Barron failed to see what she should have seen.

Moreover, Ms. Barron's own testimony that the accident occurred when she was "halfway across" or "almost across" the *center line* of Military Highway could be considered as evidence that the back end of her vehicle, which Mr. Davison hit as he attempted to turn left, was still in the lane of Military Highway closest to where Ms. Barron entered the intersection. It would, therefore, also be reasonable for a factfinder to conclude that because the accident happened in the lane closest to Ms. Barron, and farthest from Mr. Davison, that Mr. Davison entered the intersection before Ms. Barron because he would have had to first cross over the lane closest to him when entering the intersection, and travel farther than Ms. Barron to get to her side of the intersection. This conclusion would also be consistent with Mr. Davison's testimony that the accident happened as he was making his left turn, as he would have had to cross over the lane closest to him to turn left into the opposite side of the intersection.

9

Because the deposition testimony submitted by Ms. Barron and Progressive in support of their motion for summary judgment requires weighing and interpretation in order to find no fault whatsoever on the part of Ms. Barron, summary judgment dismissal of the claims asserted against her and Progressive was not appropriate.